Good morning, Your Honors. Good morning. May it please the Court. My name is Matthew Kieda and I represent the appellant, Kelvin Owen Rogers, in this dispute. A month ago today, in a case called Simms v. Griffin, this Court, in the opinion of Judge Willett, reiterated over 45 years of U.S. Supreme Court precedent and precedent from this Court regarding the qualified immunity defense in a case where a prisoner alleges an Eighth Amendment violation. Prisoners can show these clearly established rights under the Eighth Amendment were violated if a prison official, among other things, refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would clearly evince a wanton disregard for serious medical needs. A later case said a serious medical need is one for which the need is so apparent even laymen would recognize that care is required. This case preempts a unique injury, but it doesn't present a unique law. The law is clearly established here. And this case can be resolved in one of two ways. One procedurally, which is the avenue I would recommend. The substantive one would require the Court to consider whether it should determine, as a matter of law, if when a jailer is told that an inmate has suffered a head injury because a ceiling fell on him, clearly the jailer is not expected to be a neurosurgeon or a neurologist. He wouldn't be able to diagnose a traumatic brain injury simply by looking at him. So given the ubiquity of news articles, stories, television, discussion about head injuries over the last decade, whether it's about the National Football League or about children at school, we would respectfully submit that it would be completely unreasonable if someone says the ceiling just fell on me. Well, is that currently the law? We've got to look at clearly established law for qualified inmate purposes. Yes, Your Honor, because the clearly established law is you can't, what I just said, if there's ignorance or refusal to refer for serious medical needs. So if this Court wanted to sort of make new law, it could say failure to disclose or to send someone to a medical facility when they complain of a head injury, it could do that. However, I think there's a much easier avenue here. And that is, as this Court stated in 2017 in City of Fort Worth v. Darden, if there's an underlying factual dispute about what actually happened, you can't make an objective determination for qualified immunity purposes. Now, the subjective standard is used for the Eighth Amendment. So if you can't have QI when there's an objective test and there's a factual dispute below, well, you clearly couldn't have it when there's a subjective standard. Here are the evidence in the record, and I can give you page line if you like, but I think it's fairly well laid out in our briefs. My client says he went to his boss and said the ceiling fell on me, I was covered in ashes. His boss, in his deposition and in an affidavit, said he told me he was just fine and didn't seem to be, you know, just had a little dust on him. Now, the test here is whether his boss was subjectively aware of a serious medical need. And there's a dispute over who said what to whom. You know, if the boss is telling a story, Mr. Jarrett, if his version is to be believed, well, then there was no serious medical need because my client allegedly said that he wasn't hurt. However, if my client is telling the story, then we get to the next question of whether this was abdication of responsibility in the face of a serious medical need. So we would ask this Court, simply reverse this case on the facts, as a factual dispute that should have precluded summary judgment. And just as Judge Willett noted in the Sims' opinion, you know, a jury may ultimately believe a jailer over a convicted felon and likely will. But the problem is, is if we resolve this as a matter of law on a disputed factual record, as, again, you noted in the Sims' case, you have to have an order for the State. The State is entitled to an interlocutory appeal when the qualified immunity is denied. But the facts have to be material. It can't just be a regular factual dispute. So what do you do with the words subjective and substantial? Well, that's the question, Your Honor, is if his subjective knowledge of a serious medical need, we don't know. We have competing affidavits. There's some grainy pictures in the record. If this goes to trial, the jury will certainly be instructed about what they have to find in order to find for the plaintiff or find for the defendant. But on this record, how can this court make that determination? Well, in the light most favorable to your client, what did the grainy photos show? Could you repeat, Your Honor? In the light most favorable to your client, what did the – you called them grainy photos. What do they show? They show very little in the version that I have, Your Honor. What's in the trial court, I mean, right now, what I was able to download off of the record on appeal. Perhaps you have better versions that were uploaded to you. But at the end of the day, if the – there's at least three witnesses in the record who have talked about the entire ceiling falling down. There's evidence there's an admission by Mr. Jarrett that he was aware that the ceiling was being repaired. There's evidence in the record that it was raining. So the idea that it was – it's completely undisputed that he was just hit by a light piece of styrofoam, that can't – that would be turning the summary judgment standard on its head because it would be listening to the evidence of the movement and not failing to give all reasonable inferences to mine. If the government employees are always entitled to an interlocutory appeal every time qualified immunity is denied, and this court were to sort of flip the summary judgment standard by believing Mr. Jarrett versus believing my client, that will be a fact that's material to jurisdiction. And every qualified immunity case, at least those governing the Eighth Amendment, will be subject to an interlocutory appeal. And it's intended to the Supreme Court, again, if it doesn't like the way it goes. Whereas, if this court rebrands on these facts and says have a trial on this issue, regardless of who believes – who the jury believes, the losing party will come back to this court but argue on the sufficiency of the evidence in which the juror will be the – the juries will be given the credence and will do the backward standard where we'd have to find something in the evidence that would say that the jury was wrong or that there was no evidence to support its decision. Pragmatically, that seems to be the better choice because that way the jury can have its last say and this court doesn't effectively create an avenue for, you know, thousands of more interlocutory appeals simply because the government employees didn't like the result. The ultimate thing here, too, I think, is that should this court decide to answer the question of is a – is failing to report or send someone who complains of a head injury, is that serious or not serious? is it effectively gives jailers the ability to avoid summary judgment – I'm sorry, to obtain summary judgment on qualified immunity simply by attaching an affidavit that says I thought he was fine because if we're going to believe Mr. Jarrett here as opposed to my client, even though they have obviously competing versions of events, it takes the policy of treating head injuries and essentially says that they're just not important and there's only one person that can evaluate a head injury, and it's a neurologist or a neurosurgeon or someone trained in medicine. And when you look at the cases that the plaintiff – sorry, the defendants and the district court cited in its opinion, all of the ones that they claim suggest that this is simply not a serious enough injury, that really aren't the holdings. All of the cases they cite – I could walk through them if you like – they're all cases where somebody was trying to masquerade an Eighth Amendment claim into a medical malpractice claim. And they said no. If you're receiving the care, even if the doctor makes a mistake, that's not cruel and unusual punishment. We gave you the care. Medical negligence happens all the time. That's not a constitutional violation. But in the cases – in fact, I believe it was Easter v. Powell from 2006, Judge Epstein, and I believe you were on that panel – that's where the court said when somebody's medical needs are refused and they're never given the treatment in the first place, that's an Eighth Amendment violation. And that's what happened here. The only difference is that it was a doctor that was refusing the treatment or a nurse that was refusing the treatment in Easter, whereas here it was a supervisor who refused to send an inmate to get the treatment in the first place. I respectfully submit it's a distinction without a difference. But this court can reverse and remand this case for trial, and the issue of how substantial the injury was and what actually happened can be resolved by a jury rather than taking the bold step of creating new law on this issue when it can be resolved in the lower court. If you don't have any additional questions, I'd be glad to save my time on my rebuttal. Well, I would wonder what you do with Gobert v. Caldwell. Subjective knowledge of a substantial health risk and quoting Domino v. Texas, deliberate indifference is an extremely high standard to meet. It is. But again, Your Honor, just as I said before, I think that's a problem that can be solved by jury instructions. Otherwise, what is subjective? But the whole point of this area of the law is to keep these things from going to court. Respectfully, Your Honor, I think that this case presents a unique situation because I think we could all agree that failing to treat someone for a head injury could be very substantial. This person had a low-level traumatic brain injury, but it could obviously have been a lot worse. Now, could there be a ruling as a matter of law by this court or a trial court that if somebody claimed that he stubbed his toe or clipped a hangnail, the court said that's not substantial. But if this court concludes that there's at least an open question as to whether failing to report a potential brain injury . . . Well, I'm just trying to think through the practicalities of this. I mean, we have prison altercations, prisoner on prisoner, probably every day in every prison someone's hit. And so you're saying if they're hit in the head, every jailer must take them for an evaluation. I think that is not the answer that the court needs to answer today. Well, that's what I'm hearing you say. I'm saying that if it remains on the issue, we don't have a complete record here. The issue of what happens in the court below will ultimately determine it. If they want the case to be tried . . . let me back up on the answer. Judge Mayer, I think this is a better way of answering it. Yes, we have that elevated standard for Eighth Amendment claims. And we have a doctrine of qualified immunity. But those two are sometimes on the same road, but sometimes their paths diverge. You can't get a summary judgment on qualified immunity if you have a dispute over what actually happened. So it doesn't make a difference about whether we need to adopt as a matter of law this head injury . . . Well, don't we know what actually happened, the ceiling fell? If you believe the defendant, a single piece of Styrofoam fell down and my client said he wasn't at all injured. If that . . . looking at that . . . No, but let's say we believe what your client said. And he claimed . . . The ceiling fell. He claimed that the ceiling fell. It was covered in ash. He was stumbling around. He was dizzy. And, you know, his supervisor simply left him at the scene. And, you know, under the precedence that we just discussed in Sims, you know, failing to report or failing to provide care . . . when there is a serious medical need, you know, is grounds for an Eighth Amendment violation. The problem is, how do you know when someone has sustained a serious brain injury? And that's where we're going with this.  I mean, I know what we said in Sims, but I guess my question is what you said in your brief to us. I mean, the second inquiry of QI is pretty high bar, not insurmountable, but pretty high. And, as we put it in a case last year, you've got to point us to, quote, a case or body of relevant law in which an officer acting under similar circumstances was held to have violated the Constitution. So, I know what we said in Sims, but I'm focused on what you said in your brief and what case law you identified in your brief as clearly establishing the law. I think the best case that I rely on is Darden, which although, again, it was in the Fourth Amendment, not the Eighth Amendment context. This court held, if there's a substantial dispute about what actually happened, then the qualified immunity is not appropriate. And in that case, a police officer accidentally tased a man to death. And the question is, was that excessive force under the circumstances? It took place during a drug raid. And this court declined to say whether or not the use of the taser was right in the circumstance because nobody had a solid version of what actually happened. The case went back to trial. I dodged a bullet here because do we need another opinion about when you can and can't use a taser coming from the court? Or that better be determined by the jurors who serve as the conscience of our community. And that's the reason we have jury trials in the first place. I see that I'm out of time. May it please the court. This court should affirm the district court summary judgment because no reasonable jury could find that the defendants violated Mr. Rogers' constitutional rights. Deliberate indifference requires proof that the defendants were aware of a substantial risk of serious harm to the plaintiff and then consciously disregarded that risk. Mr. Jarrett did not act with deliberate indifference. There is no dispute that Mr. Rogers had no visible injuries when he appeared before Mr. Jarrett and that he was not slurring his speech when he spoke with Mr. Jarrett. Mr. Bridges also did not act with deliberate indifference. There's no dispute that Mr. Rogers asked to get lunch and that Mr. Bridges interpreted that request to mean that Mr. Rogers did not need immediate medical attention. But even if Mr. Rogers had developed evidence of an Eighth Amendment violation, this court should affirm the district court summary judgment because Mr. Rogers has not carried his burden to identify a case clearly establishing the right in question. On the clearly established point, Mr. Rogers' brief cites one case. It's Estelle against Gamble, which involved medical malpractice and does not clearly establish the right relevant to this appeal. Because the standard is deliberate indifference, the most important discovery concerns the facts that Mr. Jarrett and Mr. Bridges were aware of. Mr. Jarrett testified to what he saw during his brief encounter with Mr. Rogers. He testified that Mr. Rogers was not slurring his speech. He was not bleeding from the head. He had no visible injuries. He did not stumble into the office. Mr. Jarrett thought he looked fine. What do you take? I thought that he said he was stumbling. The plaintiff said he was stumbling. Yes, there is record evidence that two inmates saw Mr. Rogers stumble out of the barn. But as the district court recognized in footnotes five and six of its opinion, there's no dispute that Mr. Rogers was not stumbling in and out of Mr. Jarrett's office. So Mr. Jarrett did not see Mr. Rogers stumbling. I want to respond to something that Mr. Rogers says in his brief. On page 11, he asserts that inmates Turner and Cornejo told Jarrett that they saw Rogers stumbling. And their statements are at pages 283 and 285 of the record. That's wrong. Those inmates' statements do not say anything about telling Mr. Jarrett that Mr. Rogers was stumbling coming out of the barn. Mr. Rogers' brief is also wrong on page 11 in asserting that inmate Munoz told Jarrett that Rogers was covered in insulation. This is also wrong. At page 284, inmate Munoz's statement does not say that Mr. Munoz spoke with Mr. Jarrett. Mr. Rogers' brief also says that Mr. Jarrett testified that an inmate with this injury should go to medical. Mr. Jarrett gave the unremarkable testimony that if an offender is injured, there is an instruction to take him to medical. But the issue here is Mr. Rogers has not shown that Mr. Jarrett understood that Mr. Rogers was suffering from a serious injury. Mr. Bridges also did not act with deliberate indifference. It's undisputed that Mr. Bridges never saw Mr. Rogers in person until Mr. Rogers was experiencing his symptoms. The parties also agree that Mr. Bridges said that he would look at Mr. Rogers. That's the opposite of deliberate indifference. Mr. Rogers' affidavit, page 663 of the record, says that Mr. Bridges said that he would look at him later. And in his deposition testimony, Mr. Bridges testified he told Schmidt that I'd be out in a little bit. There also is no dispute that Mr. Rogers asked to get lunch when he was speaking with Mr. Schmidt. Mr. Schmidt relayed that to Mr. Bridges. Mr. Bridges interpreted that to mean that Mr. Rogers didn't need immediate medical care. Mr. Rogers submitted an affidavit after Mr. Bridges' deposition testimony and does not take issue with that testimony. As Mr. Bridges explained in his deposition on page 372 of the record, if he wanted to go eat lunch, I wouldn't say you're in immediate distress. Mr. Rogers' brief asserts on page 19 that Mr. Bridges delayed checking on Rogers for hours despite receiving Jarrett and Schmidt's recount of Rogers' allegations. There are two inaccuracies in that sentence. One, Mr. Bridges didn't delay seeing Mr. Rogers for hours. Mr. Schmidt called Mr. Bridges at 1110 a.m., and Mr. Bridges arrived on the scene at 1152 a.m. That's a difference of about 45 minutes, not hours. And there's also no evidence that Mr. Jarrett spoke with Mr. Bridges about Mr. Rogers before Mr. Bridges arrived just before noon. The facts in this case are similar to the Petzold against Rostall in case that this court decided in 2019. In that case, the plaintiff fractured his ankle in a prison, and a nurse saw the plaintiff limping, commented on the limp that the plaintiff had. The plaintiff asked the nurse if the nurse would examine the ankle, and the nurse refused. The nurse told the plaintiff to go take some ibuprofen, some pain medication. It wasn't until three days later after an x-ray that the defendants discovered that the plaintiff was suffering from a fractured ankle. And this court said that the nurse's encounters with the plaintiff were only cursory. The plaintiff never saw the—excuse me, the defendant nurse never saw the plaintiff's swollen ankle. Those facts did not rise to the level of deliberate indifference. For an example of deliberate indifference, this court can look to the case of Austin against Johnson, decided in 2003. There, the plaintiff participated in a one-day boot camp that involved various drills and exercises outside. The plaintiff became sick with heat stroke, fell unconscious, was vomiting. The defendants waited an hour and 45 minutes before calling 911 and getting help for the plaintiff. This court said that that was evidence of deliberate indifference. But significantly, the court in Austin also said that the information the defendants received before the plaintiff fell unconscious likely did not rise to the level of deliberate indifference. That was even though the plaintiff complained to the defendants that he was feeling sick. He collapsed several times while performing the exercises. He complained he was having difficulty with the exercises and he didn't finish his meal. That was not evidence of deliberate indifference. But again, even if Mr. Rogers had developed evidence of a violation of the Eighth Amendment, this court should still affirm the district court's summary judgment because the defendants are entitled to qualified immunity. This court has been crystal clear about what's required once defendants invoke qualified immunity. It is the plaintiff's burden to find a case in his favor that does not define the law at a high level of generality. And that case should involve an officer acting under similar circumstances. Mr. Rogers does not cite such a case. He cites Estelle against Gamble, which is factually different. There, the plaintiff was injured in a prison and shuffled from doctor to doctor over a period of about three months where he received various types of treatment from those doctors. The plaintiff complained he wasn't getting the right treatment. He wanted different treatment. He wanted additional diagnostics like an x-ray that he did not get. The U.S. Supreme Court held that the plaintiff had not put forth evidence of a violation of the Eighth Amendment. Unless the court has questions, I will conclude by asking that this court would affirm the district court's summary judgment. Thank you. Thank you, Your Honor. To respond to the point about whether or not Mr. Jarrett saw my client dusty or not and whether that was corroborated by other people is not the point. The point is Jarrett says things happen one way. Rogers says they happen totally different. One of them is lying, and this court can't determine it on that record. If my client came in to see his boss covered in debris and saying the ceiling just fell on me and it hurt my head, I'd like to go to the hospital, I don't think that's the exact same thing as going to the infirmary, being wrongly treated, and then claiming that the hospital was cruel and unusual to you. All of the cases that he cited were ones involving medical negligence, and that is not what we have here. We have somebody who works at a prison who is complaining of a bizarrely occurring head injury, and yet no medical treatment was given until symptoms seemed to persist. With respect to the qualified immunity issue and the clearly established law, I think the Simmons case outlined how something like this is already clearly established. But I would also say that in 1997, the United States Supreme Court heard the case of U.S. v. Lanier, and to quote directly, there has never been a Section 1983 case accusing welfare officials of selling foster children into slavery. It does not follow that if such a case arose, the officials would be immune from liability. Judge Willett, you use a phrase that I have borrowed frequently, but referring to this clearly established prong is the Asherian stairwell, because you can't have a case being qualified immunity, sorry, a case cannot be clearly established if it's the first time that it happens. So everybody gets one free bite, or alternatively, no law is ever developed. The common law freezes because we just say, well, you know, they might have been wrong, but there's never been a case like this. And given the fact that the law that we just, this Court just reiterated in Simms, talks about how you can't ignore someone's medical needs when they are so obvious that even a layman would do it. Here we have a layman who is allegedly told the ceiling just crashed on my head and I want to go to the infirmary. And taking all facts into light most favorable to my client, you believe his version, not the version that's coming from the defendants. Unless there are any other questions, Your Honor, I'll rest on my briefs. And if the Court would like a 2090-J letter for Simms, be glad to provide one.